THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. ANTONIO ROJAS NEGRÓN, Defendant and Appellant.

No. 7144. Argued April 28, 1937.—Decided April 22, 1938.

116

*Joaquín Vendrell* for appellant. *B. Fernández García, Attorney General,* and *E. Campos del Toro, Assistant Attorney General,* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

It is alleged in the complaint that from May 10, 1927, the defendant Antonio Rojas Negrón has been in possession, without just title, in bad faith, and without the consent of the plaintiff, the People of Puerto Rico, of a certain parcel of land consisting of 120 acres (*cuerdas*) owned by the plaintiff; that the plaintiff has dominion title to the said parcel by grant from the Government of the United States of America under the Act of July 1, 1902; that the Government of the United States of America acquired the parcel by grant from the Spanish Crown in 1898, under the Treaty of Paris; and that the Spanish Crown in turn acquired it by discovery in the year 1493 and by occupation from time immemorial.

It is also alleged that in the year 1926 a certain José Rodríguez Cos filed a petition for possessory title in the Municipal Court of San Lorenzo falsely alleging that he had been in continuous possession of the said parcel since the year 1923, as owner, quietly, publicly and peacefully, and without interruption; that the court, after a hearing on the petition, entered an order on October 30, 1926, which was amended by another in November of the same year, granting the petition and ordering the Registrar of Property of Caguas to record possessory title to the said parcel in the name of the petitioner without prejudice to third parties; that the Registrar did so on December 10, 1926; that on May 10, 1927,

the said José Rodríguez Cos sold the parcel to the defendant herein Antonio Rojas Negrón by a deed which was recorded in the Registry of Property of Caguas at folio 237 of volume 37 of San Lorenzo.

Lastly it is alleged that the defendant took possession and commenced to enjoy the said parcel unlawfully, without just title, in bad faith and without the consent of the plaintiff, although he had knowledge that it is public property; that he continues to enjoy and possess the parcel, having obtained therefrom fruits and profits which the plaintiff estimates at $300.

The plaintiff concludes with a prayer that it be declared to be the owner of the said parcel and that it be put in possession of the same; that the proceeding for possessory title brought by José Rodríguez Cos, the record of possessory title to the property made in the Registry of Property of Caguas in favor of the said petitioner, as well as the subsequent entry in the same registry in favor of the present defendant, by virtue of the transfer made to him by José Rodríguez Cos, be declared null and void; that the defendant be ordered to pay the plaintiff the sum of $300 for the fruits, income and use received by the former from the parcel; and that the defendant also be ordered to pay the costs of this action.

The defendant in his answer denies the essential facts of the complaint and by way of defense alleges that about the year 1880 or 1882, Esteban Rosario, a former resident of the "Espino" ward of San Lorenzo, acquired the parcel in question by purchase as follows: sixty acres from Eduardo Rodríguez, also a former resident of San Lorenzo who had held the property as owner prior to 1882, in good faith, and sixty acres from Evaristo Tirado who had acquired it in his turn by purchase from Pedro Carrasquillo; that Esteban Rosario was in possession of the said parcel in good faith, with just title, quietly, publicly and peacefully and without interruption from 1880 to 1907 when he died, and that from 1907 to

1923 the heirs of Esteban Rosario continued in possession of the said parcel as owners, quietly, publicly, peacefully, and without interruption; that as a consequence of the failure of the said heirs to pay the taxes on the parcel the Collector of internal revenue of San Lorenzo attached the said parcel and advertised its sale at public auction, which was held on July 12, 1923, and at which the parcel was adjudicated to José Rodríguez Cos for the sum of $17.30, which was the best bid made at the sale, according to the certificate of sale issued by the said Collector of Internal Revenue of San Lorenzo in favor of José Rodríguez Cos and dated December 31, 1923; that the attachment proceeding for the collection of taxes was brought by the People of Puerto Rico represented by the Collector of Internal Revenue of San Lorenzo, who was at that time an officer of the People of Puerto Rico legally authorized to effect the auction and sale of the said property as the representative and in the name of the People of Puerto Rico; that adding the time of the defendant's possession to that of the former owners of the property, more than forty years of continuous, quiet, peaceful and public possession had elapsed up to the time of the filing of the complaint herein. As a special defense it is alleged that the plaintiff's action has prescribed according to the provisions of sections 1833 and 1860 of the Civil Code in force.

The District Court of Humacao rendered judgment for the plaintiff as to the first and second causes of action. The defendant appealed from that judgment.

The appellant maintains that the District Court of Humacao erred in holding that the appellee, the People of Puerto Rico, had proved its dominion title and had identified the property it claims.

■ In order that an action of revendication may prosper, the plaintiff must prove a just dominion title and point out well, define, and identify the property which he claims; 3 Manresa 30 (2d ed.); *Merle* v. *Ramos et al.,* 31 P.R.R. 103;

*Pesquera* v. *Fernández et al.,* 22 P.R.R. 49; *Rivera* v. *Castro,* 20 P.R.R. 464; *Martínez* v. *Delgado et al.,* 18 P.R.R. 373; *Siragusa et al.* v. *People of Puerto Rico et al.,* 18 P.R.R. 579; *Díaz* v. *People et al.,* 17 P.R.R. 55; *Estate of Gorbea* v. *Pérez,* 10 P.R.R. 436; *Mollfulleda* v. *Ramos,* 10 P.R.R. 298; *Verges et al.* v. *Pietri et al.,* 9 P.R.R. 20; *Emmanuel* v. *People,* 7 P.R.R. 216; *Mouriño* v. *Carreras,* 2 S.P.R. 581.

The identification required of the plaintiff consists in a showing that the property claimed is the same as that to which reference is made in the documents which the plaintiff introduces in evidence in support of his just title; *Mouriño* v. *Carreras, supra;* and that it is in the possession of the defendant. *Estate of Gorbea* v. *Pérez,* 10 P.R.R. 436; *Velilla* v. *Pizá et al.,* 17 P.R.R. 1069; *Rosso* v. *Rosso,* 23 P.R.R. 122; *Vega et al.* v. *Rodríguez et al.,* 21 P.R.R. 318.

██ In order to establish its just dominion title the plaintiff presented two certificates issued by the Commissioner of the Interior of Puerto Rico. In the first of these there are copied certain entries in the files of the said Department in relation to certain waste lands almost entirely covered by forests and listed according to the records existing in the files of the Civil Secretaryship in March, 1900. The certificate reads as follows:

"The Commissioner of the Interior of the Government of Puerto Rico CERTIFIES: That in record Number 10 of the files of this Department, entitled 'Inventory of the public forests and waste lands in the island belonging to the State, made from the inventories and records which could be found in the files of the Civil Secretaryship in March, 1900' which is in the file entitled 'General Affairs, Indexes and Inventories', of the files of this Department at the folios hereinafter expressed there appear entries which read literally as follows:

"Folio 4: Cayey.—Name: Monte Santana.—Location.—Guabate ward.—Boundaries—N. Culebras ward of Caguas—E. the Guabate River—S. private properties of Cayey and W. the Beatriz wards of Caguas and Cayey.—Area—500.75 acres (*cuerdas*)—Remarks—Entry into possession—February 14, 1879. Monte Alto.—Name: PELADO AND VACA MUERTA RIDGE.—Location—Farayón Ward.—Boundaries—

Unknown.—Area—unknown—Remarks—The forest known by this name extends to the jurisdictions of Guayama, Patillas and Caguas.

"Folio 10: Guayama. — Name: Oriente. — Location — Carite.— Boundaries—They cannot be definitely fixed until the demarcation has been made.—Area 1,017 acres (*cuerdas*).—Remarks—Entry into possession July 16, 1877.—Name: PELADO AND VACA MUERTA RIDGE, SANTANA, AND OTHERS.—Location—Carite ward. Boundaries unknown. Area.—Unknown. Remarks—According to the records the said ridge is contiguous to the Mulas Ward in Patillas, the Farayón Ward in Cayey, and the Beatriz Ward in Caguas; and is of inferior quality.

"Folio 3: Caguas.—Name: PELADO AND VACA MUERTA RIDGE.— Location Beatriz Ward—Boundaries, unknown.—Area—unknown.— Remarks—This forest extends to the jurisdictions of Guayama, Patillas, Cayey, and Hato Grande, at which point it is known by the name of PELADO AND VACA MUERTA RIDGE.

"Folio 17: Patillas. Name—PELADO AND VACA MUERTA RIDGE. Location. Mulas Ward. Boundaries. The piece known by this name extends to the jurisdiction of Guayama, Cayey, Caguas, and Hato Grande. Area—Unknown."

In the second of the said certificates there is copied a petition by several inhabitants of the Municipality of Caguas for grants of waste lands located in the Espino Ward in the jurisdiction of Hato Grande, which is now San Lorenzo, and there is also copied the minutes of the entry into possession and demarcation of said lands. The said certificate reads as follows:

"The Commissioner of the Interior of the Government of Puerto Rico CERTIFIES: That in the files of the Public Lands division of this Department in his charge, there is a record numbered 33 of the Hato Grande section, entitled 'General Government of the Island of Puerto Rico—Bureau of Public Works, Civil Constructions, Forests and Mines—Registry No. 2090—Lands—Hato Grande—Petition filed by several inhabitants of Caguas requesting that they be granted some lands in the jurisdiction of Hato Grande located in the Espino Ward and they make a demarcation of the said lands—Begins on July 14, 1883—Ends December 12, 1885, and in which at folios 38 and 39 there appears a document which copied literally reads as follows:

" 'There is a heading which reads: National Corps of Forest Engineers. Inspection of Puerto Rico. Entry years 1884 and 85 C. de Peso N. 1,896,401.—In the Espino Ward, in the Hato Grande jurisdiction, on November 21, 1885, the Forest Assistant Ramón García Sáenz, assisted by the forester of the Second District Lope Marinero Cardenal, pursuant to order issued by the Chief Engineer proceeded in the name of the State, to take possession of the lands located in said ward and jurisdiction that were requested as waste lands by Juan Claudio Pérez, Manuel Corujo and Fernán Correa.— Said lands, whose area may be approximately around six hundred acres (*cuerdas*) are bounded on the north by the ridge that divides the.jurisdictions of Patillas and Guayama, on the east by the property of Pedro Rodríguez Calisto and on the west by the jurisdictions .of Guayama and Caguas; they are almost entirely covered by forests of the species Tabonuco and Nutmeg with some minor species like Negralora, Guaraguao, Palma de Sierra, Camacey, Palo Blanco and others.—Within the lands of which possession is taken there are some small clearings made, as was ascertained, by Juan de la Cruz who could not be found and therefore it could not be ascertained under what title he acted. At the time of the seizure which was effected in the presence of the justice of the peace of the ward Romualdo Rodríguez, the assistant prohibited all use of and benefit from the land which was seized in the name of the State. And in order that this may be recorded and produce its proper effect the present document is drawn up and signed by the Assistant together with the parties to the act, except Mr. Pedro Rodríguez, because of physical impossibility, his son Eduardo doing it for him at his request, on the date *ut supra*. Ramón García Sáenz Lope Marinero Cardenal. Romualdo Rodríguez: Eduardo Rodríguez, at the request of my father Pedro Rodríguez—Eduardo Rodríguez. A true copy— Guillerna—There is a stamp which reads: Inspection of Forests of Puerto Rico.' "

As we noted before, the .People of Puerto Rico, as plaintiff in the present action of revendication, had the burden of connecting the property described in its complaint with the properties described in the two certificates copied, in such a way as to show that the former is included in the latter. In order to accomplish this identification the plaintiff presented oral evidence. This evidence consisted of the testimony of

Armando Morales Cano, engineer and surveyor, and of José Castro Martínez, surveyor. They both testified that in 1923 they had worked on the demarcation of the properties described in the two certificates copied, and affirmed, on the basis of the survey and investigation made by them at that time, that the property described in the complaint is included in the forests "De la Vaca Muerta" and "Pelado Ridge" therein described.

Armando Morales Cano testified among other things that he is a civil engineer and has been employed as a surveyor in the Public Lands Division of the Department of the Interior, for twenty-four years; that he has examined the forests of the People of Puerto Rico in different jurisdictions of the Island; that in 1923 he determined the boundaries of public forests in the jurisdictions of San Lorenzo, Cayey, Caguas, Patillas and Guayama, including the "Espino" ward of San Lorenzo; that after summoning the occupants of the said lands and demanding that they present the documents authorizing them to occupy them, he proceeded to survey them; that the object of the survey of the lands was to place them under the Homestead Act; "that almost all of the land in the 120 acres (cuerdas) was covered by forests and that there were some parts near the river bank which were cultivated"; that the witness and those who accompanied him in making the survey took possession in the name of the People of Puerto Rico of the 120 acres and took to the occupants a pamphlet in order that they might have recourse to the Homestead Act and notified them that that land was the property of the State.

The part of the testimony of this witness in which he connects the property described in the complaint with the forests described in the said documents, appears in the statement of the case in the following manner:

"Q. Witness, I am showing you a document marked 'Plaintiff's, Exhibit No. 1,' in which it appears that the People of Puerto Rico is owner of certain 'public forests and waste lands.' I want you

to tell me, on the basis of the investigation and survey which you made, if those 120 acres (*cuerdas*) are included in the land which appears in that certificate."

After objection by the appellant, the witness answers "that he examined the document, that the property is within the forest called 'Vaca Muerta' according to the description which appears there near the ridge which divides the jurisdictions of Caguas and San Lorenzo and of Cayey and Guayama."

"Q. Witness, I am now showing you plaintiff's exhibit No. 2 in which appears a seizure made by the forest engineers, for the Spanish Government, of certain lands in the 'Espino' ward in the jurisdiction of Hato Grande. I want you to tell me, according to the investigation and survey which you made, whether the property in controversy in this suit is included in or is within the boundaries of the lands which were seized."

"A. Yes, sir, in the description of this forest which appears here in the certificate."

José Castro Martínez testified that he is a surveyor and has been employed as such in the Public Lands Division of the Department of the Interior of Puerto Rico for about fourteen years; that he has had to make some surveys in the central part of the Island, in Caguas, Cayey, San Lorenzo and Patillas; that in the "Espino" ward he has made surveys at the places called "La Macanea" and "Quebrada Lajas"; that they were ordered by the Commissioner of the Interior in order to mark the boundaries of that zone about February 1923; that four brigades went out, one commanded by Armando Morales Cano, another by Eduardo Castro Martínez, another by one Sabás Honoré, and another by the witness; that the object of the work was to mark the boundaries of the state forests; that he was in that zone between Espino and Patillas for four years; that that property is within the state forests; that the land of that property was covered with forest and underbrush; that after surveying the lands they left them in the care of the forest wardens and that

they turned them over to the custody of the Homestead Bureau; that the witness found one Evangelista Claudio on the 120 acres; that he could not tell exactly which land Evangelista Claudio was occupying, but that the witness told Evangelista Claudio that that land he was occupying was considered state property and that if he wished to do so he might have recourse to the Homestead Act and that Evangelista Claudio signed some petitions in the presence of the witness after having sworn to them before the judge of San Lorenzo; that in addition to Evangelista Claudio he found Isabel Claudio on the property; that Isabel Claudio occupied a small part of the property; that he required her to show her title; that he informed her that that land belonged to the People of Puerto Rico; that Isabel Claudio had resort to the Homestead Act.

In our opinion the testimony of these experts is sufficient to show clearly that the property claimed is included in the property described in the two certificates presented by the plaintiff to establish its just dominion title.

The plaintiff was relieved of the obligation of proving the other element necessary to the identification of the property, that is, that the property described in the complaint is in the possession of the defendant, inasmuch as the latter expressly admitted this fact in his answer.

The certificates copied, as well as the testimony of the two experts to whom we have referred, also show clearly that the property claimed by the plaintiff forms part of a portion of waste lands covered almost entirely by forests and thick underbrush, with but a few pieces of lands under cultivation. Considering the nature of the lands which form the parcel in controversy it is necessary to conclude that the title to the parcel is in the State.

As the appellant well states, it is a matter of judicial notice that the Island of Puerto Rico was discovered in the year 1493 in the name of and for the Spanish Crown, and that originally the entire territory of the same belonged to

the King, part of it gradually passing to private ownership by onerous or free grants made directly by the Central Government, by *amparo* title granted by the Board of Waste Lands, and by adverse possession which extinguished the dominion title.

By the provisions of section VIII of the Treaty of Paris (30 Stat. at Large, p. 1754; Revised Statutes 1911, secs. 6593–6610), Spain ceded to the United States of America all the buildings, docks, quarters, forts, establishments, public ways, and other real property which according to law were public domain and as such belonged to the Spanish Crown.

On July 1, 1902, the Congress of the United States approved an act authorizing the President to reserve lands and public buildings belonging to the United States on the Island of Puerto Rico for certain public uses and to grant the land and buildings not reserved, with the exclusion of the ports, navigable rivers, bodies of water and their beds, to the Government of Puerto Rico (32 Stat. at Large, Part I, Chap. 1383, p. 731). In compliance with that act and through several proclamations the President reserved certain lands and buildings, among which the public forests are not included.

The nature of the property having been established, it is evident that the title to the same is in the plaintiff, the People of Puerto Rico, and that the revendication requested lies, unless the defendant shows that the said property has become private property through any of the means recognized by law. *People* v. *Dimas,* 18 P.R.R. 1019.

The defendant has presented no evidence tending to prove that he or his predecessors acquired title to the parcel in controversy by free or onerous grant from the Spanish Crown, the Government of the United States or the Government of Puerto Rico, but he presented evidence which proved that the acquisition was made in the following manner:

Esteban Rosario acquired 50 of the 120 acres *(cuerdas)* of which the parcel consists, by purchase from Pedro Rodrí-

guez Calexto; 60 acres *(cuerdas)* by purchase from one Eduardo Rodríguez, who in his turn had inherited it from his father, the aforementioned Pedro Rodríguez Calexto; and the remaining 10 acres *(cuerdas),* by purchase from a certain Prudencio Montañez.

Esteban Rosario returned the parcel in question in the year 1901 for the purposes of property taxes for the said fiscal year. The parcel continued to appear in the records of the Insular Treasury for the purposes mentioned in the name of the said Esteban Rosario until the year 1907–08. Upon the death of Esteban Rosario the property passed to his heirs, in whose name it appears for the tax purposes mentioned until the fiscal year of 1926–27.

In the attachment proceeding brought by the Collector of Internal revenue of San Lorenzo against the heirs of Esteban Rosario, the property was put up at public auction and after notice to the heirs was adjudicated to José Rodríguez Cos for the sum of $17.30.

On May 4, 1925, Rodríguez Cos instituted a dominion-title proceeding in the District Court of Humacao requesting that it order the recording of the property in question in the registry of property in the name of the petitioner and his wife. This proceeding was dismissed for lack of prosecution.

On October 22, 1929, Rodríguez Cos brought a possessory-title proceeding in the Municipal Court of San Lorenzo. The petition was finally granted and the Registrar of Property of Caguas was ordered to record the material possession of the property in question in favor of the petitioner, without prejudice to third parties.

Subsequently, Rodríguez Cos sold the property to the defendant Antonio Rojas Negrón, who is now in possession of it.

As may be seen from the above, the defendant has not shown that the property involved has passed from public to private ownership through one of the recognized legal means,

that is, by a valid grant, free or onerous, from the Spanish Crown or the Government of the United States, during the respective periods when they were owners of the same, or from the Government of Puerto Rico after the year 1902, to a private person. This being the case, the District Court of Humacao did not err in applying sections 5 and 6 of our Political Code and section 1 of the Regulations Governing the Improvement of Public Lands in Puerto Rico which read as follows:

"Section 5.—The original and ultimate right to all property, real and personal, within the limits of Porto Rico, and not belonging to the United States, is in the people thereof.

"Section 6.—Whenever the title to any property fails for want of heirs, or next of kin, it reverts to The People of Porto Rico. All property within the limits of Porto Rico, which does not belong to any person belongs to The People of Porto Rico.

"Section 1.—(*Regulations Governing the Improvement of Public Lands in Puerto Rico.*)—For the purpose of the Regulations and in accordance with act 14, title 12, book four of the Compilation of the Indies, all waste lands, soil and parcels which have no legitimate private owner, or what is the same, have never passed to private ownership by virtue of free or onerous grant from the competent authorities, will be considered as crown property."

Nor did the District Court of Humacao err in holding that the evidence presented by the defendant in this case to establish his dominion title to the property in question is confused, contradictory and insufficient to destroy the title which the People of Puerto Rico established in its favor.

The defendant does not claim to have acquired the property in controversy by virtue of a free or onerous grant from the competent authorities, but by virtue of adjudication in an attachment proceeding for the collection of taxes on the said property owed by the heirs of Esteban Rosario, in whose name the said property appears reported in the Insular Treasury Department for the purposes of the said taxes.

Inasmuch as the property of the People of Puerto Rico is exempt from all taxes, the sale of such property for fail-

ure to pay taxes is null and void, and confers no title to the purchaser.

This is the prevailing rule in North American jurisdictions.

61 Corpus Juris, section 1801, p. 1295, states:

"Since property belonging to the United States or to a state is not subject to taxation, a sale of such property for taxes, being null and void, passes no title whatever to the purchaser. The same rule applies to the sale of land which is exempted from taxation by contract or legislative grant. But a private person may have an inchoate or equitable title to land, the fee of which remains in the public, and this interest may be taxable and may pass to the purchaser at a tax sale."

Other pertinent paragraphs of the encyclopædia cited are the following:

"Ordinarily a purchaser at a tax sale comes within the rule caveat emptor, and is not a bona fide purchaser without notice, since the proceedings for the collection of taxes are matters of public record, to which intending purchasers have access, and they are chargeable with knowledge of defects which the records disclose. Such purchaser must take notice of all jurisdictional defects, and as against them he cannot be said to be a purchaser in good faith. Where the proceedings are based on the judgment or decree of a court, such a purchaser may generally rely on it to protect himself; but his title is liable to be divested by the cancellation or setting aside of the tax sale for cause, provided he has notice of the proceedings. A purchaser of real property at a tax sale is not entitled to protection as an innocent purchaser where he purchases for a grossly inadequate consideration; . . ." (61 C. J. 1321.)

From the above it clearly appears that the purchaser at a tax sale of lands which later turn out to be the property of the People of Puerto Rico, acquires no title of any sort to said property. Similarly, one who buys land from such a purchaser acquires no title of any sort.

See 61 C.J. section 1858, p. 1327, where it is said:

"Even before the expiration of the time allowed for redemption, the tax purchaser may convey his interest otherwise than by an assignment of the certificate of sale. After that time he may dispose

of it like any other title to any grantee; but the nature of the title is not changed by such transfer, hence the grantee must generally be prepared to maintain its validity, the same as the original purchaser, and if the tax-sale purchaser acquired no title, he cannot transfer any to his grantee."

In the instant case the Collector of Internal Revenue of San Lorenzo awarded the property in controversy, in an attachment proceeding brought against the heirs of Esteban Rosario, to José Rodríguez Cos. Rodríguez Cos obtained the approval of a petition for possessory title whereby he was able to record the material possession of the property in the Registry of Property of Caguas in his name and without prejudice to third parties. Before such possession had been converted into a dominion title, Rodríguez Cos sold the property in question to Rojas Negrón. In the present revendication action the People of Puerto Rico claims dominion title to the property and has successfully proved that it has not ceded this title in any manner. Under such circumstances, the lower court did not err in holding that the evidence presented at the trial by the defendant as to his title, is insufficient to destroy the title shown by the People of Puerto Rico.

■■ Taking into consideration the facts proved, it is not difficult to conclude that when the change of sovereignty was effected in the Island, dominion title to the property claimed in the complaint had not become consolidated in the appellant. In other words, on that date the appellant could not show a title gained by possession for thirty years or more. If the change of sovereignty had, as is natural, the effect of interrupting the running of the prescriptive period theretofore accrued in favor of the appellant, and if the prescription by adverse possession cannot be alleged against the People of Puerto Rico since 1898, as was held by this court in *People* v. *Dimas et al.*, 18 P.R.R. 1019, we must unavoidably agree with the lower court that the action of the appellee was not barred by limitations.

The judgment appealed from must be affirmed.

Mr. Justice Wolf dissented.